Filed 3/26/13  Davis Family Capital Partners v. Comte CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DAVIS FAMILY CAPITAL PARTNERS, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> WILLIAM COMTE et al., <br><br> Defendants and Respondents. | G046254 <br><br> (Super. Ct. No. 30-2010-00430679) <br><br> O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Derek W. Hunt, Judge.  Affirmed.

Ingber & Associates and Kenneth S. Ingber for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith and William John Rea, Jr., for Defendants and Respondents.

\*                \*                \*

Appellant Davis Family Capital Partners, Inc. (DFCP) appeals from the trial court's judgment dismissing its complaint in a shareholder derivative action after the trial court sustained the demurrer to the second amended complaint. DFCP contends the trial court erred in requiring it to post a bond under Corporations Code section 800, in sustaining the demurrer, and in awarding attorney fees as liability on the bond. We affirm.

The trial court did not err in sustaining the demurrer or requiring a bond be posted as a condition of maintaining the derivative action. The issue of the order awarding attorney fees as liability on the bond is not properly before us as it was made after DFCP filed its notice of appeal and, although such an order is appealable as an order after judgment affecting the substantial rights of the parties (Code of Civ. Proc., § 904.1, subd. (a)(2)), DFCP did not appeal from that order.

I

FACTS

In December 2010, DFCP and other plaintiffs filed a complaint "individually and derivatively on behalf of Accentcare, Inc., a Delaware Corporation," for breach of a fiduciary duty, naming Accentcare, Inc. (Accentcare), William Comte, and 11 other named individuals as defendants. The complaint alleged the named individuals were directors and/or managers of Accentcare. According to the complaint, DFCP owned common shares of Accentcare. The purported breach of a fiduciary duty revolved around a 2007 Management Incentive Plan (MIP, or the plan) to provide an incentive for Accentcare's directors and managers to stay with Accentcare. The plan provided that in the event of a merger or sale, 10 percent of the purchase price would be paid into the plan and distributed to the officers and directors of Accentcare.

All but one of the named defendants, including Accentcare, filed a demurrer to the complaint. DFCP did not respond to the demurrer and instead, filed a

2

first amended complaint. Another demurrer followed. The court struck that portion of the first amended complaint naming Accentcare as a defendant, finding DFCP's cause of action was derivative and for the benefit of Accentcare. It also sustained the demurrer with leave to amend.

DFCP then filed its second amended complaint, adding seven additional individual plaintiffs.[1] Each of the seven additional plaintiffs had owned common stock in Accentcare. The complaint purported to allege causes of action for conspiracy, fraud, unjust enrichment, unfair business practice, and breach of a fiduciary duty. It alleged plaintiffs held common stock in Accentcare and that the participants in the MIP sold Accentcare to receive moneys under the plan, all to the detriment of the owners of common stock. According to the complaint, the Board of Directors of Accentcare failed to disclose the effect the MIP would have on stockholders. It further alleged the plaintiffs learned on June 2, 2010 that Accentcare was being sold for $100,062,000, of which $11,365,330 would be paid into the MIP, certain preferred shareholders would not receive full payment and common shareholders would receive nothing from the sale. The next month, plaintiffs notified defendants "of their objections and concerns" about the merger and the MIP. It appears the objection did not have to do with the merger, but rather with the distribution of the proceeds from the sale.

Thereafter, on November 1, 2010, plaintiffs' counsel sent defendants a copy of the proposed complaint and demanded certain materials from defendants. Plaintiffs alleged defendants intentionally misled them into believing the materials would be supplied and the complaint would be considered before any further actions were undertaken, but defendants accelerated the merger without notice in an effort to prevent plaintiffs from filing a derivative action. On November 24, 2010, plaintiffs received a "Notice of Merger and Appraisal Rights." The notice stated Accentcare received

---

[1] Of the plaintiffs, only DFCP filed a brief on appeal.

3

sufficient stockholder consent to approve the merger. The Board of Directors approved the merger as a "fair valuation under current conditions" and because the offer was "more favorable to the Stockholders than any other offer that could at present be obtained." Plaintiffs alleged defendants did not consider the best interests of Accentcare and its shareholders, and did not act in good faith.

Defendants demurred to the second amended complaint and filed a motion to require plaintiffs to post a bond pursuant to Corporations Code section 800.[2] The court ordered plaintiffs to post a bond in the amount of $50,000 and continued the hearing on the demurrer. The court subsequently sustained defendant's demurrer as to the first and fourth causes of action for conspiracy and unjust enrichment without leave to amend, stating conspiracy is not normally a cause of action and "unjust enrichment is not a cause of action." The court sustained the demurrer as to second and third causes of action for fraud and unfair competition with leave to amend, and sustained the demurrer to the fifth cause of action for breach of fiduciary duty without leave to amend, citing a Delaware Supreme Court case, *Lewis v. Anderson* (Del. 1984) 477 A.2d 1040 (shareholder divested of status after corporation merged into a new corporation).

Plaintiffs did not file a third amended complaint. DFCP is the only plaintiff to appeal.

II

DISCUSSION

A. *The Bond Requirement*

The defendants brought a motion under section 800 requesting each of the plaintiffs be required to post a $50,000 bond for the reasonable and probable attorney fees in defending the derivative action. Section 800 sets forth "the terms and conditions

---

[2] All further statutory references are to the Corporations Code unless otherwise stated.

4

under which a shareholder derivative action may be maintained. [Citation.]" (*West Hill Farms, Inc. v. RCO Ag Credit, Inc.* (2009) 170 Cal.App.4th 710, 715.) The purpose of the bond provision of subdivision (c) of section 800 is to shield the corporation from meritless lawsuits by requiring the plaintiff to provide a bond as a condition of maintaining the lawsuit. (*Jara v. Supreme Meats, Inc.* (2004) 121 Cal.App.4th 1238, 1259.)

When a motion for a bond is made, the defendant must demonstrate either that he or she did not participate in the transaction complained of *or* that "there is no reasonable possibility that the prosecution of the cause of action alleged in the complaint against the moving party will benefit the corporation or its shareholders." (§ 800, subds. (c)(1), (2).) DFCP does not argue the trial court erred in concluding there was no reasonable possibility the lawsuit would benefit Accentcare or that there was a defendant who did not participate in the complained of transaction.[3] DFCP has therefore waived any such argument. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 ["'[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration. [Citations.]' [Citations.]"].)

Rather, DFCP argues the trial court erred in requiring plaintiffs to post a bond because the motion was untimely, in that it was brought more than seven months

---

[3] Defendant M'Liss Jones-Kane filed a declaration averring she never participated in the MIP, was never a member of the Board of Directors of Accentcare, and was not involved in the decision to adopt or approve the MIP.

after DFCP initiated the below action and section 800, subdivision (c)[4] requires the motion be brought within 30 days of the service of summons. The argument lacks merit.

The second amended complaint was filed on June 15, 2011, and added seven new plaintiffs. The motion for an order requiring a bond pursuant to section 800 was filed the next month, on July 27. We see no reason why a plaintiff should be relieved of the obligation to post a bond by the simple expedient of joining a lawsuit at the second amended complaint stage. Moreover, the second amended complaint named an additional defendant, Mel Deutsch, who was alleged to have been an officer of Accentcare. Deutsch apparently made his initial appearance in the action by way of the demurrer to the second amended complaint,[5] as the proof of service attached to the second amended complaint does not state Deutsch was served with the second amended complaint. As Deutsch had not been served with the complaint, the first amended complaint, or the second amended complaint, DFCP has failed to demonstrate the motion for an order requiring the posting of a bond was untimely in that the motion was made more than 30 days after service of the summons. Indeed, we have not been referred to a summons in the record and have not found one.

B. *The Demurrer*

In reviewing a judgment of dismissal after the trial court has sustained a demurrer, "we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. [Citations.] When

---

[4] "In any action referred to in subdivision (b), at any time within 30 days after service of summons upon the corporation or upon any defendant who is an officer or director of the corporation, or held such office at the time of the acts complained of, the corporation or the defendant may move the court for an order, upon notice and hearing, requiring the plaintiff to furnish a bond as hereinafter provided. . . ." (§ 800, subd. (c).)

[5] "A general appearance by a party is equivalent to personal service of summons on such party." (Code of Civ. Proc., § 410.50, subd. (a).)

6

a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]" (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) When the demurrer to a cause of action is sustained without leave to amend, the appellate court must determine if there is a reasonable possibility the complaint could be cured by amendment. The plaintiff must bear the burden of proving the defect could be cured by amendment. (*Cambell v. Regents of University of California* (2005) 35 Cal.4th 311, 320.)

In opposing defendants' demurrer below, DFCP argued it had plead direct and derivative causes of action. On appeal, however, DFCP makes no argument concerning any direct cause of action. Instead, its only argument is in connection with the ruling on the demurrer is whether the trial court "erroneously dismissed derivative claims."[6] DFCP has not raised any issue in connection with any purported direct cause of action, and has therefore abandoned any such claim. (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 793, fn. 2.) Consequently, we limit our decision to whether the trial court erred in sustaining the demurrer in connection with DFCP's derivative claims.

The trial court sustained the demurrer to the breach of a fiduciary duty cause of action because it is a derivative cause of action and DFCP lacked standing to bring a derivative action under the Delaware Supreme Court's decision in *Lewis v. Anderson*, *supra*, 477 A.2d 1040.

As noted above, Accentcare is a Delaware Corporation. Under Delaware law and in the context of a corporate merger, "'a derivative shareholder must not only be a stockholder at the time of the alleged wrong and at the time of the commencement of

---

[6] DFCP purports to raise three issues in connection with the court's ruling on the demurrer. There are, however, but three different ways of stating the same issue: whether DFCP pled sufficient facts for a breach of a fiduciary duty; whether the trial court erred when it sustained "the demurrer to the breach of fiduciary claim;" and whether the trial court erred in dismissing the derivative claims.

7

suit but that he must also maintain shareholder status throughout the litigation.'" (*Lewis v. Ward* (Del. 2004) 852 A.2d 896, 901, fn. omitted, quoting *Lewis v. Anderson*, *supra*, 477 A.2d at p. 1046.) In Delaware, "it is well established that a merger which eliminates a derivative plaintiff's ownership shares of the corporation for whose benefit she has sued terminates her standing to pursue those derivative claims." (*Lewis v. Ward*, *supra*, 852 A.2d at pp. 900-901, fn. omitted.) When a merger eliminates a shareholder's status in a corporation, any derivative claims "pass by operation of law to the surviving corporation, whose board of directors then has the sole right and standing to prosecute the action." (*Id.* at pp. 903-904.)

There are two exceptions to this rule: "(i) if the merger itself is the subject of a claim of fraud, being *perpetrated merely to deprive shareholders of the standing to bring a derivative action*; or (ii) if the merger is in reality merely a reorganization which does not affect plaintiff's ownership in the business enterprise." (*Lewis v. Ward*, *supra*, 852 A.2d at p. 902, italics added, fn. omitted.) DFCP contends the first exception applies in this matter, but the facts alleged in the complaint do not support the exception.

According to the second amended complaint, Accentcare's directors approved the MIP in 2007. The purported purpose of the plan was to provide incentive for its directors and officers to remain with the corporation. The MIP provided that in the event of a merger, 10 percent of the purchase price would be paid into the plan. Approximately three years later, DFCP was informed in June 2010 — presumably, as were all shareholders in Accentcare — that the corporation was being sold. DFCP thereafter unsuccessfully undertook efforts to change the distribution of the sale price. DFCP apparently requested or demanded that 20 percent of the money earmarked for the MIP be distributed to holders of common stock. Those alleged facts, however, do not support a reasonable inference the purpose of the proposed merger was *merely* to deprive DFCP or other shareholders of a derivative suit.

Our analysis would be no different under California law. "[W]e hold that California law, like Delaware law, generally requires a plaintiff in a shareholder's derivative suit to maintain continuous stock ownership throughout the pendency of the litigation. Under this rule, a derivative plaintiff who ceases to be a stockholder by reason of a merger ordinarily loses standing to continue the litigation." (*Grosset v. Wenaas* (2008) 42 Cal. 4th 1100, 1119, fn. omitted.) Accordingly, we find the superior court did not err in sustaining the demurrer to the second amended complaint. Additionally, DFCP has not asserted it could add allegations in a third amended complaint to cure the defect found by the lower court. We therefore conclude the superior court did not err in denying DFCP leave to amend by filing a third amended complaint.

C. *Execution of the Bond*

DFCP argues the trial court erred in granting defendants' attorney fees as liability on the bond following the notice of entry of judgment. The argument is not cognizable in this appeal. On December 20, 2011, DFCP appealed from the judgment of dismissal entered on October 26, 2011. According to DFCP, defendants' motion to recover attorney fees as liability on the bond was filed on March 8, 2012, months *after* DFCP filed its notice of appeal. An appeal from a "postjudgment award of attorney fees is separately appealable as an order after judgment. (Code of Civ. Proc., § 904.1, subd. (a)(2); *Citizens Against Rent Control v. City of Berkeley* (1986) 181 Cal.App.3d 213, 223.)" (*Building a Better Redondo, Inc. v. City of Redondo Beach* (2012) 203 Cal.App.4th 852, 869-870, fn. omitted.) DFCP did not appeal the court's postjudgment order and cannot raise the issue in this appeal.[7]

---

[7] We denied DFCP's request to augment the record on appeal with the post judgment notice of motion and motion to enforce liability on bond, opposition to the motion, and the court's minute orders relating to the motion because all such matter occurred after the filing of DFCP's notice of appeal from the judgment.

9

### III

### DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


FYBEL, J.